Good morning. May it please the court, Harini Raghupati, Federal Defenders of San Diego, for the appellant Mr. Jose Luis Hernandez-Arias. Mr. Hernandez's attempted reentry conviction must be vacated and count one of the indictment dismissed, because the entry of his 2010 removal order was fundamentally unfair for three reasons. First, the immigration judge improperly ordered Mr. Hernandez removed as an alien who had not been admitted, when he was in fact admitted through his adjustment to temporary resident status. Second, Mr. Hernandez's due process and statutory right to counsel was violated when the immigration judge solicited a mass waiver. And third, the immigration judge failed to advise Mr. Hernandez of his apparent eligibility for 212H relief. I'll discuss each of these due process violations in turn. First, Mr. Hernandez was not removable as charged. In the notice to appear, the government alleged a single ground of inadmissibility, that Mr. Hernandez was an alien present in the U.S. without admission. But Mr. Hernandez wasn't inadmissible for this reason, because he was admitted through his receipt of temporary resident status. Can I ask you just about the language of, I guess it's A6AI, the particular provision under which he was charged with being removable. It says an alien present in the United States without being admitted. And I just, I guess my, the natural reading I would give to that language would be that it's talking about a status that you have to have at the time that you're being charged with being removable, right? Which would support the government's position here. And I just, maybe you could respond to that. Am I reading too much into the use of the word being admitted? Do you mind if I grab my brief? So, Your Honor is correct. It does say without being admitted. But I believe in the NTA, which is what gave Mr. Hernandez notice of the charges on page 219 of the ER, the allegations are you're an alien present who was not then admitted. So, the language differs a little bit in the NTA. But regardless. But the NTA can't deviate from the statute. Correct, correct. Regardless of that minor difference, I think that the question here is whether Mr. Hernandez was admitted. And the language been admitted I don't think is ambiguous. I think. Being, being admitted. I guess that's what I'm stuck on, without being admitted. It just makes it sound like we're going to look at your status today and, I don't know. Because otherwise it could have said without having been admitted or, you know, if it's talking about some historical event in the past as you'd like us to read the statute. But to me the choice of the word being admitted. Well, the statute says present in the U.S. without being admitted. So, at the time that Mr. Hernandez was put into removal proceedings, he wasn't present without being admitted because he had been admitted. Well, sure he was because his status had been terminated by that time. His status had been terminated. And there's a regulation that says once your status is terminated, you revert to whatever status you would have without the thing that's been revoked. Correct. The regulation says that your status goes back to being in an unlawful position. But it doesn't have any effect. It doesn't say what happens to the admission. And, in fact, in matter of Castro Valdez, the BIA interpreted that very regulation and said, what that means is that when an alien loses his temporary resident status, he's put back into the position where he doesn't have lawful status. But he nevertheless remains an admitted alien so that he can only be removed under Section 1227, which are the deportability proceedings. He can't be removed under Section 1182. And there the BIA was interpreting its own regulations, and this court owes substantial deference to the BIA. But was that a published decision? That was not. It was an unpublished decision. But this court and in our, the Supreme Court, has held that when an agency interprets its own regulations, even when that's done through an informal means, this court owes that agency interpretation substantial deference unless it's plainly erroneous. And the government hasn't provided any reason in its briefs as to why that interpretation of the regulation is plainly erroneous. I thought we had held that we would only give deference to BIA rulings if they were not just that they were published but that they were by at least a three-member panel or perhaps the BIA sitting on bond. Well, I think that arises in the context where the BIA is interpreting statutes. And so this is a different scenario because the BIA is interpreting regulations. And here Congress expressly delegated the task to the BIA to fill in statutory gaps by enacting regulations. And so the BIA was interpreting a creature that it itself enacted. And so, therefore, the BIA has greater expertise when it comes to interpreting its own regulations as opposed to statutes, which are a creature of Congress. I would also point this court to the decisions in matter of Cenotes Cruz versus Gonzales, where this court noted that adjustment to temporary residence constitutes an admission. And then in matter of Perez, which was an en banc BIA case, they also held that adjustment to temporary residence constitutes an admission within the meaning of the immigration laws. And that admission remains regardless of whether or not the temporary status is terminated? Those cases, no. Those cases address the preliminary question of whether adjustment to temporary residence constitutes an admission. For the second question of whether termination of the temporary residence status has an effect on the admission, I think there's no published case law. It's an open question. There's no published case law going either way. However, the matter of Castro Valdez, the unpublished BIA decision, which I spoke to earlier, does suggest that the regulation, that the interpretation of the regulation that the government advanced below, is incorrect, that once an alien loses status, they remain admitted and they can only be put into deportation proceedings. And that isn't a distinction. Well, that seems, even if there is some level of deference accorded, it seems to me that Castro Valdez just doesn't make sense out of the regulation. In other words, even if we owe some deference, it's not a blank check. And I fail to see the logic of it, because if the person is returned to their unlawful status, they're unlawfully here. I just don't understand how it just undoes the regulation to read it that way. Well, they're unlawfully here, but I think that that interpretation of the regulation conflates status and admission. They're different concepts. Status is a legal construct, and it can be granted and then it can be taken away, whereas admission is a procedural fact that occurs when certain procedural rights. And isn't adjustment to temporary status a status and not an admission? I mean, it seems to me that it just – I guess I just don't see the logic of that position either. You have two premises. The first is that adjustment to temporary status, even though it's about status, equals an admission, and I have trouble with that as well. Well, there's case laws. I mentioned Cenotes Cruz and Madera-Perez, which is an en banquier opinion, that say that adjustment is a functional equivalent of being inspected and authorized to enter at the border, and that the INA definition isn't the exclusive definition, which is inspection and authorization at the port of entry, isn't the exclusive means by which admission is acquired. And so I think that that first premise has basis in the law in both Cenotes Cruz and Perez. The second question, as I mentioned, is an open question about the effect of the regulation, but I think status and admission, once admission occurs, it's not something that can be undone. Mr. Hernandez was present unlawfully in the United States, and he could have been removed on other grounds that the government chose not to allege. The question isn't whether he was removable. He may have been removable on other grounds, but the question is whether the grounds charged in the notice to appear were the correct grounds. And our position is that under Madera-Castro-Valdez, they were not the correct grounds. And I see that I have a short time remaining. Yes, certainly. May it please the Court, Stephen Clark, the United States appellee in this matter. With respect to Count I, what the appellant is asking this Court to do is to find that Congress, in enacting the amnesty legislation in 1988, intended to go much farther than simply changing the status from unlawful to lawful temporary residence, and in fact intended to grant admission permanently, forever, for all time, for all immigration and naturalization purposes. There's simply no basis for the Court to find such a sweeping change in the application of the Immigration and Naturalization Act. Why would we? I don't understand that argument at all. I mean, he would certainly have been removable under other provisions that the government could have charged. So it's not like we're saying he gets to stay here forever. Well, what you'd have to find is that admitted, as argued by the appellant, constitutes the equivalent of having entered at a port of entry and been inspected by an immigration officer and been authorized entry as a fact. And if that is, in fact, true for this appellant, it would be true for all others, and that would be the sweeping conclusion that I think there's no basis for finding that Congress intended. Congress's intent seems to be clearly expressed by the enabling regulations under which this appellant entered the country. That is, his status was changed from unlawful to lawful temporary residence. If he were only a temporary resident, it makes no logical sense that he would also be considered at the same time to have been, as a matter of fact, as argued by the appellant, granted admitted status as if he had crossed the port of entry, been inspected, and authorized to enter. So, counsel, the BIA has said that we have consistently construed an adjustment of status as an admission. What does that do to your argument, then, if the BIA has construed adjustment of status as an admission and the defendant, in fact, was adjusted in terms of the temporary status? What does that do to your argument? Well, it certainly is a counterpoint to the argument, but I think I would respond with, as the district court did below with his reference to and finding persuasive the Mukasey, excuse me, the Federals v. Mukasey Ninth Circuit opinion. Unpublished. Unpublished, valued only as or honored only as persuasive authority. But if I'm going to argue this court that you should consider persuasive authority from the BIA or persuasive authority from the Ninth Circuit, I'm always going to go with the persuasive authority. But the BIA was interpreting its own regulation, which gives it a little more gravitas. Wouldn't you agree? That's certainly within the power of this court to find. My point really is that in order to sustain the position of the appellant in this case, this court really has to find that Congress intended a much more sweeping change in the immigration naturalization law such that the basic definition of admitted in the Immigration Naturalization Act would be extended far beyond the meaning of having crossed at a port of entry been inspected and authorized entry. Can I ask you just about the regulation itself? Because this is what has been a sticking point for me in terms of accepting your argument. So if you look at, I don't have the full regulation, not the full site in front of me. Oh, it's the section 245A.2U3. And, you know, compare that to 4, to U4. Just help me with what's the difference between termination and rescission? And if we accepted your argument as to what the effect of a termination is, what work would there be left for a rescission to do? I think I can put my finger on that, if I may. I think just from the plain language of the provision that you're referring to, it says termination not construed as rescission under section 246. It's referring to something that's apart from the particular termination that we're talking about. Right. This was a termination based on criminal conviction. But if you look at 246, what it says is basically the effect of a rescission is to put someone in the position where that past event, it's like that past event never happened. Right. And so, I mean, that to me is what you're arguing for, is that he did acquire admitted status, albeit through the, you know, back in the past, and it got rescinded, it was taken away. But, you know, a true rescission would mean that we're going to treat that as though it never occurred. And that, to me, is what a rescission would be. Termination, obviously, is something that the regulation is saying is different. Well, if I have misled the court, I apologize. The position of the government is that this appellant was never admitted within the meaning of the Immigration Act. Let's say we don't accept that argument. You concede that you lose and the indictment has to be dismissed? Yes. Okay. It's that simple. What is the following right after U4 is V? I'm sorry about how these things are so difficult to deal with in terms of their numbers, but it has a provision about ineligibility for immigration benefits, and it says that an alien whose status, I'm going to paraphrase it, an alien whose status is adjusted to lawful temporary resident is not entitled to any benefit accorded to aliens who are lawfully admitted for permanent residence. And it seems to me that that at least suggests that the temporary status cannot be equated to lawful admission for permanent residence. What do we make of Part V of this regulation? I have that same provision in front of me, and I think the court is correct that it clearly makes a very significant distinction. And it, on the one hand, draws, once again for me at least, the almost limitless complexity of the immigration and naturalization law, but it does bring out that the termination of temporary resident status is far different from other actions taken under the code or the Immigration and Naturalization Act. But again, I just want to emphasize the point that Judge Watford made. If this court finds that for purposes of the Immigration and Naturalization Act, this appellant and all those like him were admitted by the change of status from unlawful to lawful temporary resident, count one doesn't stand. Okay. I mean, I didn't realize that you were conceding that point, because I thought the backup argument that I thought you were making was the stronger one. Don't we have pretty persuasive authority on the admitted part? I think it's that en banc BIA decision that I would assume we would give deference to that, right? That the adjustment of status does count as an admission for these purposes? I think the opinion in McCasey, Perez v. McCasey, is it's a more persuasive opinion and should have more persuasive power before this panel. I mean, I just looked at it again two seconds ago, and there's no reasoning. I don't know, what are we going to be persuaded by? Just that another panel gave us the conclusion, but there's no reasoning to support it. You mean no reason not to accord weight to the? No reasoning to support the conclusion. No reason. No analysis, no reasoning. In the Memorandum of Disposition in Perez, I think they're referring to. I'm sorry? The Memorandum of Disposition in Perez is conclusory. I think that's what is being suggested. That's correct, Your Honor. I'm not trying to gild the lily. It's just that the district court deciding this case had the choice of persuasive authority on which to base a decision. It relied on the basic language of the Immigration and Naturalization Act, what does admitted mean. It relied on the implementing regulations for the change of status of the appellant in this case. It relied in part on Perez v. McKaysey. And I think it relied on the common sense conclusion that Congress did not intend for persons who got lawful temporary residence to somehow be construed as lawfully admitted forever for all Immigration and Naturalization Act purposes and forever. Can you just, your time is almost up, can you just give us one example of maybe an unintended consequence that might befall us if we were to say that this person was in fact admitted? I mean you sort of suggested that it would have these sweeping consequences and God knows what would happen to us if we were to hold that. But give us one example of what might be an unforeseen consequence. Well, I think we're looking at this case is an unforeseen consequence. I cannot accept the logic that Congress intended that a person who was admitted for lawful temporary residence subsequently convicted of truly heinous criminal conduct for which there would be no conceivable plausible relief from removal who would then go through proceedings based on the charge or the reason for removal that he was not previously admitted would somehow get a second bite at the apple because that admitted could be construed by virtue of this change of status to equate or to equal having crossed the border with inspection, with approval by an immigration office. Thank you, Counsel. I believe you have about a minute and a half of your time remaining. A few points, please. First, I think given the government has conceded it's not arguing the second premise, which is that the termination of Mr. Hernandez's status had any undoing effect on his admission, they're adhering primarily to the first point, which is that he was never admitted in the first place. And I think given that procedural posture of this case, the BIA's en banc decision in matter of Perez and this court's decision in Cenotes Cruz show that his adjustment was an admission and therefore the indictment should be dismissed. Well, in all fairness, those cases did address LPRs. No, both of those cases addressed adjustment to temporary resident status under the amnesty 1255A. And said that what? That those were admissions? That's correct, that when an alien acquired temporary resident status under 1255A, that he underwent an admission for purposes of the immigration law. How is that consistent with subpart V of the regulation of 245A.2, which says that an alien whose status is adjusted to that of lawful temporary resident, and I'm leaving out some words, is not entitled to any other benefit or consideration accorded under the act to aliens lawfully admitted for permanent residence. It seems to me that that pretty squarely says that if you get this lawful temporary resident status, it is not equivalent to admission. I think that that interpretation would be valid if admission were a benefit, but I don't think that admission is a benefit. Well, that's not the, but it's, well, so, but it would seem to me that your interpretation would read this section out of the regulation, because if, in your view, the person has been admitted by receiving this temporary status, then why wouldn't they be entitled to all these other things? It just, it seems like an odd reading of it to say they're admitted, but they don't get any of the benefits of being admitted. Well, respectfully, I don't know what section 203A.2 is, so I can't comment on that, but I think that it would be entirely within the agency's discretion to say that we're going to reserve giving certain benefits, whether they be employment benefits or what other benefit, whatever other benefits this provision is referring to, until the alien has successfully transitioned from a temporary to a permanent resident and has demonstrated their continuous residence in this country and whatever other factors allow an alien to acquire permanent resident status. But I don't think, I think that benefit and admission are different concepts. Well, isn't this regulation just saying that if you're admitted for temporary status, you just don't get the benefits accorded to people who've been admitted for permanent status? Correct. That's all it says to me. That's my interpretation of it as well. And then my last point is that the government's position that Congress clearly couldn't have intended adjustment to temporary residence to be an admission I think is belied by the statutory language itself. 1255AA says that the attorney general shall adjust the status of an alien to that of an alien lawfully admitted for temporary residence. So Congress uses the word admitted in the amnesty provision itself. So I think that that use of the word admitted in the statutory language is an unambiguous expression that Congress actually intended adjustment to be an admission. Counsel, what were the two cases that you said equate temporary admission with temporary adjustment with admission? Cenotes Cruz v. Gonzalez, which is a Ninth Circuit case, and then Matter of Perez, which is a BIA case. Were those the unpublished? No, that's on Bonk, BIA on Bonk. And then there's also Matter of Mendoza-Munoz, which is BIA unpublished. All right. Thank you. And just what was the statutory site you just gave? Was it 1255AA? Yeah. Good. Thanks. Thank you. Thank you. The case just argued is submitted. We appreciate the helpful arguments of both counsel.
judges: Graber, Rawlinson, Watford